By the Court. Woodruff, J.—
The principal grounds upon which it is insisted that the judgment herein should be reversed, are, that the various findings of the Judge, at Special Term, are without evidence, or against evidence.
We have examined the evidence with care, and in connection with the views of the plaintiff’s counsel, as given us on the argument, and submitted in the points.
*261 The burthen of showing that the plaintiff had been deceived, or defrauded by false representations respecting the value of the property, was upon her. Ho witness testifies that the property was, at the time of the sale, worth less than the price at which it was sold to the plaintiff. Some of the defendant’s witnesses testified, in relation to the great bulk of the articles, and their value, at a time shortly before the sale, and their testimony tended to show that the property was not over-estimated. On the other hand, the plaintiff’s witness testified to the value when the receiver took possession, and one of them stated, that at that time (nearly two years after the sale) the property would not be worth, if new, over $2635.54. Under such a state of the proofs, we cannot say that the finding of value is against evidence. The proofs may not be so clear and convincing as to admit of no doubt. We are free to say it is not. And the very large depreciation which results from the value found, would at first view seem incredible. But even this, the Court might, and no doubt did, consider sufficiently explained by the evidence, showing the purposes for which the property had been used by the plaintiff, and the usage to which it had been subjected by the rough, noisy and riotous men who frequented the plaintiff’s house, and the destruction which they are testified to have caused.
The price of the sale being found reasonable, and there being an entire failure of any affirmative evidence, (other than such as related to value,) showing, or tending to show, fraud or misrepresentation, or improper influence of any kind, to induce the plaintiff to purchase the property, the amount of depreciation was a necessary arithmetical result, from the further proof given, on the part of the plaintiff herself, that the property, when taken possession of by the receiver, was worth only the sum which the Court have found.
Upon the fact so found, the principle of the decision is not, as far as we understand, sought to be impeached by the appellant. Indeed it is in precise accordance with the prayer of the complaint itself. That prayer proposes to charge the plaintiff, on a rescission of the contract of sale, with the deterioration in value of the property by reason of its use by the plaintiff; and this was done by the Court. The prayer of the complaint proposes a restoration of the property to the defendant; and this was done. And *262 the plaintiff is allowed the full value of the property when the possession was delivered to the receiver, without any abatement.
It is quite true, that the application of the principle of the decision to the facts, did not, result so favorably to the plaintiff, as it would, had the facts been proved as alleged; but that is not because the plaintiff has sought relief upon an erroneous principle, but because she failed to prove a state of facts, which would produce a favorable result. Obviously, if the deterioration in value had not exceeded the sums which she had already paid, it would, upon the principle of the decision, have only remained to cancel the outstanding obligations, and direct the delivery of the property, or its proceeds, to the defendant.
The seeming hardship of requiring the plaintiff to pay- a still further sum, as a condition of rescinding the contract, is only a necessary result of the same rule, which, under other circumstances, would have required no payment from her whatever, and might, perhaps, have permitted her to reclaim what she had paid.
We have no doubt of the correctness of the rule. At law, the infant might successfully have defended an action upon her notes. But, even at law, she could not recover back what she had paid, without restoring the whole consideration, either in specie, or by a full equivalent.
And when it becomes necessary for her to go into a court of equity, to cancel her obligations, or regain the pledge given for their performance, seeking equity, she must do equity. Making full satisfaction for the deterioration of the property, arising from its use, is doing no more. Presumptively, she has derived from the use of the property a profit, or benefit, equivalent to such deterioration. Whether that presumption is, under all circumstances, conclusive, it is not necessary to say, since there is nothing in this case to rebut the presumption. The deterioration here, is found to have resulted from the use which she has enjoyed; and if it resulted from an abuse of the property, the plaintiff’s equity is no greater. In a ease in which the. property to be returned is shown to have depreciated in value from other causes, the inquiry may be, what benefit, if any, has the infant derived from the property, and that only may be chargeable; unless, in such case, the impracticability of restoring the defendant to the con *263 dition in which she was, before the sale, would be a reason for not interfering to give any relief.
We think, therefore, that the decision, making it a condition that the plaintiff restore the property, with all the benefit presumptively derived from its use, which, in this case, is regarded in the complaint itself, as well as the decision, as the deterioration arising from such use, was correct, and in accordance with well-settled principles. (7 Hill, 110; 17 Barb. 428; 11 Paige, Ch’y R. 107; 2 Id. 191; 3 Sandf. Ch’y, R. 431; Story on Conts. §63, and cases cited.)
A doubt may exist upon the question, whether the infant can herself elect, before she arrive at her majority, whether to affirm, or disaffirm her purchase. Her contract was not void. She could affirm it when she became of age, or elect to disaffirm it. But that it is, upon the proofs in this case, for her interest to rescind, is not questionable. And no exception is taken to the ruling, in her favor, on that subject.* Besides, we find on recurring to the evidence, that, although she had not attained to full age when the action was commenced, the Court gave her two months, after attaining her majority, within which, to elect, whether to affirm or rescind. So that, in this respect, no duty of the Court, in protecting the rights of infants, was left unperformed.
It remains to consider the plaintiff’s exceptions to the rulings of the Court, in receiving and rejecting testimony.
The defendant’s counsel, with a view to show or to account for the great deterioration in the property, arising from its use, inquired of one of the witnesses, for what purpose the house was occupied while the witness resided with the plaintiff (viz., about sixteen months)? We need hardly say, that the purposes to which a house is devoted, may tend directly to account for the injury and depreciation resulting therefrom to its furniture. The Court could not know, on the objection being taken, what the answer to the question would be, and, therefore," so long as the Court could see that a house might be occupied for some purposes which would manifestly tend to cause an injury to the furniture, or account for an extraordinary deterioration, of which evidence already appeared, the question should be allowed. Whether the immediate answer to the question showed a purpose which would *264 of itself tend to thus injure and impair the value of the furniture, we are not able to say, but the answer was not objected to, nor made the ground of renewed objection to the question, and the question, as put, was proper. The further answer of the witness, in relation to the conduct of the visitors at the house, was clearly competent.
The questions, what the defendant paid for the furniture which she purchased from one of the witnesses, Stover, and what was its value, were both objected to. First, that the cost was no proof of its value, and second, that the property was - not sufficiently identified as the furniture in question.
On the question of the identity of the furniture, there was enough to warrant the submission of that very question of fact to the Court, and that warranted proof of the value which would become material, if the Court was satisfied of such identity. It was furniture of the same general description, in the same house, in the possession of .the defendant shortly before, the sale, and she. had apparently sold the entire furniture of. the house she had theretofore occupied, to the plaintiff. There was a just and fair presumption, that the furniture was the same.
As to the evidence of its cost, it should be, borne in mind, that the defendant was charged with falsehood, fraud ,and misrepresentation in relation to the value' of the property. On a question of fraud, it is clearly competent to show that, the party charged had, very shortly before the sale, purchased the property at prices corresponding with her representation of value. Whether it is any proof of actual value or not, it is some evidence of good faith.
What has been said in regard to the identity of the property, and to the charge of fraud, applies also to the objection to the testimony of another witness, (Parker,) who testified to the sale of other articles of furniture. If there were particular articles in the bill of sale produced, which on the face of the bill appeared not to be part of the furniture in question, that furnished no reason for excluding the whole bill. The objection was not pointed to particular items, and the Court must, of necessity, in the application of the evidence, discriminate between .the items.
On the examination, one of the plaintiff’s witnesses had testified to the value of the property, and that $1317.77 was the fair value when it was delivered to the receiver; and he had also tes *265 tilled, that the furniture was sold at public auction for all that it was worth, and the case then states, that “ the defendant objects to evidence of how much it sold for, and the Court sustains the objection.”
If there were no explanation of this ruling to be gathered from the other parts of the case, it would seem liable to this criticism, that, inasmuch, as the plaintiff was to be charged with the whole deterioration in the value of the property, and the proceeds of the sale were to be paid over to the defendant, it would follow, that if the actual proceeds of the auction sale were larger in amount than the estimated value when the receiver took possession, which was taken into view in ascertaining the depreciation, the amount at which the property actually sold should have been credited to the plaintiff instead of such lower estimate of value; it would not be just to permit the defendant to receive the larger sum in actual cash, and then test the deterioration by the lesser sum at which the value was estimated. The property could not, for the purposes of this account between the parties, be deemed worth less than it actually produced on the sale.
The obvious justice of this criticism, and also the fact that no such point appears to have been specifically taken at the trial, and that we find no such view of this question in the points of the appellant, plainly suggest that it was perfectly understood (though no formal admission appears, in this case as made up) that the proceeds of the sale did not exceed the valuation of the witness, and that the whole trial proceeded upon that concession. That this was so, appears from the decision of the Court above recited, in which it is declared that the judgment allows to the plaintiff, by way of deduction from the price she agreed to pay, the difference between the net proceeds of the property, sold by the receiver, and its actual value at the time he took possession. Of course, then, the amount of such proceeds was less, and not more than such value; or, in other words, she was, in fact, allowed more than the amount of the proceeds.
It is, therefore, clear, that the plaintiff was not seeking to prove, that the property sold for a greater sum than was, in fact, allowed therefor to the plaintiff.
No doubt, the plaintiff sought the evidence, as a part of her endeavor, to depreciate the value of the property, as much as possi *266 ble, for the purpose of insisting upon the evidence, as tending to show, that the sale to her was made upon a gross and fraudulent over-valuation.
The question which was put to the witness, and upon which the Court made the ruling, is not stated in the case. It seems to us, that the subject had already been exhausted so far as the witness was concerned. He had stated the value according to his judgment, at $1317.77, and that it sold for all it was worth. So far, the testimony was not objected to, nor rejected. It was the plaintiff’s witness; as to her he must be taken to have testified truthfully, and if so, the question, how much it sold for, was already answered, viz., $1317.77.
We are aware that this latter suggestion is inconsistent with the evident concession already mentioned, that, in truth, the property sold for less.
But it is equally clear, that if proof that it sold for less was to be taken as evidence that it was worth less (when it came to the receiver’s possession) than the witness had stated, and the sum allowed, the plaintiff is benefited rather than prejudiced by the exclusion of further inquiry. For if by showing a sale for less, the plaintiff would have shown that the property was worth less than was allowed to her therefor, then clearly she would have been chargeable with a larger sum for deterioration.
But, laying aside all speculation and conjecture in regard to the subject, into which we have been drawn by the singularity of an objection to the witness’ naming the amount of the proceeds in dollars and cents, we cannot perceive, in the connection in which the ruling stands, but that the witness had answered the question. . When he stated that the value of the property was $1317.77, at the time the receiver took possession, and that it sold for all it was worth, he had given the Court to understand, that it sold for $1317.77, unless it is possible, that in the interval a further depreciation had taken place.. This may, perhaps, be the real explanation of the obscurity which we find. It might be very true, that the property, when it came to the hands of the receiver, was fairly worth the sum named, and yet, at a subse quent sale, have, to some extent, further depreciated.
It was not competent, for any purpose, to show such further depreciation. If the property, when the plaintiff surrendered it, *267 was worth $1317.77, no subsequent value, and no subsequent sale, could tend to show that the price at which it was sold to the plaintiff, by the defendant, was unreasonable, or founded on a false valuation.
In the argument upon the facts, it was suggested, that a picture of Washington, mentioned in the testimony of the witness Vultee, had come to the possession of the defendant, and yet, that no allowance had been made to the plaintiff for it; and her possession of the picture was admitted.
We find nothing more in the testimony on the subject. Ho such picture is mentioned among the property sold and mortgaged, in any terms, by which we can say it formed any part of the sale in question. There is no evidence in regard to its value, and no point upon the subject appears to have been presented to Court at Special Term. We think that the proof in regard to the picture, is so incomplete and unsatisfactory, that we cannot say that the plaintiff ought to h'ave had any further allowance.
We think that there are no' sufficient grounds for disturbing the judgment. It must, therefore, be affirmed.
Judgment affirmed.

 Parson’s Merc. Law, p. 4, and Vent v. Osgood, 19 Pick 5Í2..