By the Court.—Freedman, J.
—This action is brought for the wrongful conversion by the defendant of plaintiff’s property, consisting of the contents of the saloon No. 44 Clinton place in the city of New York, and valued at $700, and upwards. The complaint contains a second count for damages to the extent of $300 for loss of business, etc., occasioned by the conversion. The answer contains a general denial, and a justification of, the taking of the goods and chattels under and by virtue of a chattel mortgage. At the trial it appeared, that on November 1, 1876, one George A. Von Rauscher carried on the business of a lager-^iie^/saloon keeper at No. 44 Clinton place, and was the owner of the goods and chattels covered by the mortgage. On that day he executed a chattel mortgage on said goods and chattels to his brother August Von Rauscher, conditioned for the payment of the sum of $340, on or before November 1,1877, which said sum, according to the language of the mortgage, was further secured by a note *36 made by Greorge A. Yon Rauscher to August Yon Rauscher payable on demand. The. mortgage was filed December 12, 1876.' By assignment dated April 28, 1877, August Yon, Rauscher transferred said chattel mortgage to Greorge Ringler & Co., of which the defendant was and is a member, and at the same time delivered to him the promissory note referred to. On October 19, 1877, Greorge A. Yon Rauscher' died, and thereafter the public administrator was appointed administrator of his estate. On October 27, 1877, the public administrator sold the said goods and chattels and the appurtenances of the saloon at public auction to the plaintiff, who thereupon entered into possession of the place and continued the business with the property thus purchased, and, as is claimed, with other property which he bought and added. On November 10, 1877, the defendant on behalf of the holders of the mortgage entered the premises, and, as it is claimed, took away the entire contents of the saloon.
In order to defeat the mortgage, the plaintiff gave evidence to show that at the time of the making of the mortgage, and also at the time of his death, Gieorge A. Yon Rauscher was an infant. .
The question of infancy was, with others, submitted to the jury, and in respect to it they were instructed in substance, that the mortgage was void, or at least voidable, if Greorge A. Yon Rauscher was not twenty-one years old when he made it, and that if they should find,, that as matter of fact, Greorge A. Yon Rauscher at that time was not twenty-one years of age, the plaintiff was entitled to a verdict for the' value of the goods, and that in such case it was not necessary for them to consider the other parts of the case.
The jury having rendered a verdict for the plaintiff for $800, coupled with a special finding, that the mortgagor was not twenty-one years of age when he made the mortgage, the exceptions taken by the defendant to the part of the charge referred to and to the refusals of the court to charge otherwise, present the following two questions, even if it be assumed that the special finding was correct upon the facts, namely : (1) Was the mortgage void or merely voidable ? *37 (2) If voidable merely, could it be avoided without the restoration of, or at least an offer to restore the consideration received upon it % The right of the public administrator to avoid his intestate’s contracts on the ground of infancy, is co-extensive with, but not greater than the right which the intestate would have, if he were living.
As a general rule, most of the acts of infants are voidable only, and not absolutely void ; and it is deemed sufficient if the infant be allowed, when he attains maturity, the privilege to affirm or avoid, in his discretion, his acts done and contracts made during infancy. And though it may sometimes be, and perhaps frequently is, difficult to ascertain the precise line of distinction between void and voidable acts, and between the cases which require some act to affirm a contract in order to make it good, and some' act to disaffirm it in order to get rid of its operation; yet all the books are said to agree in one result, that whenever the act done may be for the benefit of the infant, it shall not be considered void, but he shall have his election, when he comes of age, to affirm or avoid it. This, says Parker, Ch. J., in Whitney v. Dutch (14 Mass. 457), is the only clear and definite proposition which can be extracted from the authorities. The leading case upon this point is Zouth v. Parsons (3 Burr. 1794), in which it was held by the K. B., after a full discussion and great consideration of the case, that an infant’s conveyance by lease and release was voidable only. The doctrine of this case, says Chancellor Kent, in his Commentaries; has been recognized as law in this country, and is not now to be shaken. And according to the same learned jurist, the tendency of modern decisions is in favor of the reasonableness and policy of a very liberal extension of the rule, that the acts and contracts of infants should be voidable only, and subject to their election,when they become of age, either to affirm or disavow them. For if their contracts were absolutely‘void, it would follow as a consequence that the contract could have no effect, and the party contracting with the infant would be equally discharged (2 Kent's Com. 10th ed. 268, *235).
*38 It may, therefore, be confidently asserted that at the present day only such acts of an infant are absolutely void as are incapable of being legally ratified. This disqualification exists only to acts which cannot be for the benefit of the infant, and to acts as to which the disability of the infant must be maintained-upon grounds of public policy.
The case at'bar presents no such exceptional feature. On the contrary, there was sufficient evidence upon which the jury might have found, not only that the giving of the chattel mortgage may have been, but that it was for the benefit of the infant. George A. Yon Rauscher depended for his living upon the success of the business carried on by him. The money for which the note and chattel mortgage were originally given, seems to have been loaned to him by his brother August, for the purpose of enabling him to carry on said business. It also appeared that at the time of the transfer to George Ringler & Co., he was indebted to said firm in the sum of $333, for beer sold and delivered. He was unable to discharge that indebtedness, and yet wanted more beer, which George Ringler & Co. declined to furnish. To secure that indebtedness and also to induce future deliveries, the note and mortgage were at his request transferred by his brother August to George Ringler & Co., and upon the faith thereof the said firm continued to supply him with beer up to the time of his death. At that time his indebtedness had increased to $693. This evidence should have been submitted to the jury with the instruction that, if they believed it, the chattel mortgage was voidable only, and not absolutely void.
The next question then is, whether, in order to avoid it, it was necessary for the public administrator to restore, or offer to restore, the consideration.
The consequences or effects of the disaffirmance of the acts of infants are different, according as the contract is ex-ecutory on both sides, or executed on one side and executory on the other, or executed on both sides. The rules applicable to contracts remaining executory on both sides need not be considered here. As to the rules applicable to *39 contracts partly or wholly executed, the following authorities may be profitably referred to.
In Bartholomew v. Finnemore (17 Barb. 428), the rule was laid down that, if an infant has executed a contract on his part, by the payment of money or delivery of property, he cannot afterward disaffirm it, and recover back the money, or claim a return of the property, without restoring to the other party the consideration received from him.
This doctrine was approved by this court in a later case involving the same question, and the rule stated as follows : “ The terms on which a rescission will be allowed are, a restoration of the property to the defendant, and the payment of such a sum as, with the payments made on account of the purchase, equals the deterioration of the property in value, caused by the plaintiff’s use of it” (Gray v. Lessington, 2 Bosw. 257).
And in another case, in the late court of chancery, where it appeared that the infant had purchased property and executed a mortgage upon it to secure the purchase money, it was held that, after the infant£ £ became of age he was at liberty to affirm or disaffirm the mortgage. If he affirmed it, he must pay the amount, or deliver the goods, according to its tenor. If he disaffirmed the mortgage, he must restore the goods or account for their value. He cannot affirm the sale and keep the property, and, at the same time, repudiate the mortgage” (Ottman v. Moak, 3 Sand. Ch. 431).
And in still another case, in the same court, the chancellor laid down the rule that, “an infant cannot retain property purchased by him, and at the same time repudiate the contract of purchase under which he received the property. And when the infant, after he becomes of age, repudiates the sale, the title to the property remains in the vendor, as between such vendor and the infant” (Kitchen v. Lee, 11 Paige, 107).
Chancellor Kent lays down the rule on the subject as follows: “If an infant pays money on his contract, and enjoys the benefit of it, and then avoids it when he comes of age, he cannot recover back the consideration paid. On *40 the other hand, if he avoids an executed contract when he comes of age, bn the ground of infancy, he must restore the consideration which he had received. The privilege of infancy is to be used, as a shield, and not as a sword ” (2 Kent’s Com. *240).
Tyler on Infancy (p. 77), says the rule may be regarded ' as settled that “ if the infant has the property purchased, or consideration received, and it is capable of specific return, he must restore it to the adverse party if he disaffirms the sale.”
It is only when it affirmatively appears that the infant has squandered or lost the property or money during infancy, and is unable to refund, that the court will not compel him to make restitution. This principle was enforced in Green v. Green (69 N. Y. 553), and similar cases, but it is an exception to the rule, as stated above.
The case at bar does not fall within the exception last referred to. George A. Yon Rauscher, at the time of his death, left property which, even under unfavorable circumstances—namely, upon a public sale made by the public administrator in the face of the public protest of the mortgagees—brought more than sufficient to satisfy the chattel mortgage.
Nor does the case in connection with the question of infancy, and beyond the mere fact of infancy, disclose any equities affecting the validity of the mortgage, if, indeed, it was good under the statute of frauds. George A. Yon Rauscher died an infant. Hence, if the chattel mortgage, can be avoided by the public administrator, on the ground of the infancy of the deceased, under the plea that he represents other creditors, the claim of every one of such other creditors is liable to the same objection.
On the contrary, if the chattel mortgage was good under the statute of frauds, the case presents strong reasons why, under the authorities referred to, the plea of infancy should be made to depend upon a restoration of the consideration. George A. Yon Rauscher, though an infant, depended upon his business for a living. George Ringler & Co. assisted him. *41 They did not know he was under age. The mortgage, in terms, did not purport to secure the payment of the note, but was conditioned for the payment of the sum of $340 on or before November 1, 1877. To further secure the payment of said sum the note was given. The note was made payable on demand. Upon the faith of the transfer of the note and mortgage, but relying principally, if not exclusively, upon the mortgage, George Ringler & Co. not only allowed their claim for $333 to .stand, but agreed to deliver more beer. Pursuant to such agreement they did make further deliveries, and on account of them George A. Yon Rauscher was indebted to them, at the time of his death, in the further sum of $360. No part of this or of the prior indebtedness has ever been paid. Nor is there any pretense that they ever collected anything upon the note. In every aspect, therefore, that can be taken, George Ringler & Co. parted with full value upon the faith of the mortgage.
Upon the facts, as they appeared, the jury should have been instructed, that if they believed the testimony herein-before referred to, and upon it found that, though George A. Yon Rauscher was an infant, the giving of the chattel mortgage was beneficial to him, the mortgage was voidable only, and not void; and that, if they further found that the mortgage was not invalid under the statute of frauds, and that George Ringler & Co., upon the faith thereof, parted with value, the public administrator could not avoid it without restoring, or, at least, offering to restore, the value so parted with, not exceeding, however, the amount specified in the mortgage.
For the reasons stated there was error in the charge and in the refusals to charge otherwise.
The questions arising under the statute of frauds as to the validity of the mortgage were properly submitted to the jury; but under the charge delivered, the jury may not have passed upon them, for they were expressly instructed that the plaintiff was entitled to a verdict for the value of all the goods taken, if, as a matter of fact, the deceased was not twenty-one years of age at the time of the making of *42 the mortgage, and that in such case it was not necessary for the jury to consider the other parts of the case.
The judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.
Russell, J., concurred.